RECORD NO. 13-1228

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

———————————

MICHAEL LEWIS SCOTT,

*Plaintiff-Appellant,*

v.

WATSONTOWN TRUCKING CO. INC.;
WILLIAM A. MILLER, III,

*Defendants-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

———————————

**RESPONSE BRIEF OF APPELLEES**

———————————

JOHN K. MESSERSMITH, IV
JAMES H. REVERE, III
KALBAUGH, PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, VA 23236
(804) 320-6300 Telephone
john.messersmith@kpmlaw.com
jh.revere@kpmlaw.com

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Case No. 13-1228

MICHAEL LEWIS SCOTT,                                          Plaintiff-Appellant,

v.

WATSONTOWN TRUCKING CO., INC.

and

WILLIAM A. MILLER, III,                                      Defendants-Appellees

## **WATSONTOWN TRUCKING CO., INC.'S STATEMENT OF CORPORATE AND FINANCIAL INTEREST**

Pursuant to Local Rule 26.1 of the United States Court of Appeals for the Fourth

Circuit and to enable Judges to evaluate possible disqualification or recusal, the

undersigned counsel for Watsontown Trucking Co., Inc. in the above captioned action,

certifies that there are no parents, trusts, subsidiaries and/or affiliates of said party that

have issued shares or debt securities to the public.

WATSONTOWN TRUCKING CO., INC.

By _____ /s/ _____
                          Counsel

John K. Messersmith, IV (VSB #26403)
James H. Revere, III (VSB#33757)
Counsel for Defendants Watsontown Trucking Co., Inc. and
William A. Miller, III
KALBAUGH, PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300/(804) 320-6312 (fax)
john.messersmith@kpmlaw.com
jh.revere@kpmlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of March, 2013 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John R. Garza, Esquire
Garza, Regan & Associates
17 West Jefferson Street, Suite 100
Rockville, MD  20850-2309

Thomas T. Heslep, Esquire
419 Seventh Street, NW, Suite 405
Washington, DC  20004

/s/
James H. Revere, III

# <u>TABLE OF CONTENTS</u>

Page

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.............................................................1

STATEMENT OF THE CASE...............................................................2

FACTS ..................................................................................................3

SUMMARY OF ARGUMENTS...........................................................10

ARGUMENT .......................................................................................12

I.    The Missing Witness Instruction Was Properly Given Under The Facts And Circumstances Of The Case As Tried......................................12

Standard of Review ..............................................................12

Discussion of Issue ..............................................................12

A.    Availability ..............................................................15

B.    Materiality ..............................................................17

II.   Appellants Argument Requesting The Court To Abrogate The Missing Witness Instruction Is Neither Appropriate Nor Timely............18

Standard of Review ..............................................................18

Discussion of Issue ..............................................................19

III.  Appellant's Argument That He Relied Upon The Courts Initial Ruling On The Missing Witness Instruction, Is Inappropriate And Not Based Upon The Rules of  Civil Procedure ........................................................20

Standard of Review ..............................................................20

Discussion of Issue ..............................................................21

i

IV.  Even If The Missing Witness Instruction Was Inappropriate It Is Not Grounds For A New Trial.................................................................23

   Standard of Review ...................................................................23

   Discussion of Issue ..................................................................23

CONCLUSION.................................................................................27

CERTIFICATE OF COMPLAINCE WITH RULE 32(A) ...................................28

CERTIFICATE OF SERVICE .............................................................29

ii

# TABLE OF AUTHORITIES

## CASES

*Ananias Grajales-Romero v. American Airlines, Inc.*,
    194 F.3d 288 (1st Cir. 1999)..........................................................................15

*Bank of Montreal v. Signet Bank*,
    193 F.3d 818 (4th Cir. 1999) .......................................................................23

*Belk, Inc. v. Meyer Corp.*,
    679 F.3d 146 (4th Cir. 2012)].......................................................................19

*Bouchat v. Baltimore Ravens Football Club, Inc.*,
    346 F.3d 514 (4th Cir. 2003) ...........................................................12, 18, 20

*Doe v. Johnson*,
    52 F.3d 1448 (7th Cir. 1995) .......................................................................19

*Gray v. Great American et al.*,
    970 F.2d 1081 (2nd Cir., 1992) ...................................................................13

*Hardin v. Ski Venture, Inc.*,
    50 F.3d 1291 (4th Cir. 1995) .......................................................................23

*Kean et al. v. Commissioner of Internal Revenue*,
    469 F.2d 1183 (9th Cir. 1972) ...............................................................15, 16

*Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*,
    196 F.3d 409 (2d Cir. 1999) ..................................................................12, 13

*Mattison v. Dallas Carrier Corp.,*
    947 F.2d 95 (4th Cir. 1991) .........................................................................19

*Meier v. CIR*,
    199 F.2d 392 (8th Cir.1952) ........................................................................13

*N. Sims Organ & Co. v. SEC*,
    293 F.2d 78 (2d Cir. 1961), cert. denied, 368 U.S. 968, 7 L. Ed. 2d
    396, 82 S. Ct. 440 (1962)..............................................................................14

*Nelson v. Green Ford, Inc.*,
    788 F.2d 205 (4th Cir. 1986) ............................................................12, 18, 20

*In re: Ricky Donovan Van Vleet, d/b/a First Financial Center, Inc., Debtor,*
    *Douglas Bailey, Appellant, v. Tom H. Connelly*,
    461 B.R. 62 (U.S. Dist. Ct. Colo. 2010) ........................................................14

*RIJ Pharmaceutical Corp. v. Ivax Pharmaceuticals, Inc.,*
    322 F. Supp. 2d 406, (U.S. Dist. Court Southern Dist. N.Y. 2004) ..............14

*Shirley Hoffman v. Caterpillar*,
    368 F.3d 709 (7th Cir. 2004) ..........................................................................13

*State v. Lewis*, 245 Conn.
    779, 717 A.2d 1140 (1998) ..............................................................................13

*Teague v. Baker*,
    35 F.3d 978 (4th Cir. 1994) .............................................................12, 18, 20

*United States of America v. Currency in the Total Amount of $2,223.40*,
    157 F. Supp. 300 (U.S.D.C. Northern Dist N.Y. 1957) ................................15

*United States of America v. R. L. Roberson*,
    233 F.2d 517 (5th Cir. 1956) ..........................................................................14

*United States v. Fields*,
    102 F.2d 535 (8th Cir. 1939) ..........................................................................14

*United States v. Torres*,
    845 F.2d 1165 (2d Cir. 1988) .........................................................................13

*Wadsworth v. Clindon*,
    846 F.2d 265 (4th Cir. 1988) .........................................................12, 18, 20

## STATUTES

28 U.S.C. §1291, .................................................................................................1
28 U.S.C. §1332(a) .............................................................................................1

# RULES

Fed. R. Civ. P. 51 ...........................................................................................19

Fed. R. Civ. P. 51(a).............................................................................20, 21, 22

Fed. R. Civ. P. 51(a)(2)(A) ...........................................................................22

Fed. R. Civ. P. 51(c)(1) ...........................................................................19, 20

Fed. R. Civ. P. 51(d)(2).................................................................................20

Fed. R. Civ. P. 59 ..................................................... 1, 7, 10, 11, 12 18, 19

Fed. R. Civ. P. 61 .........................................................................................23

# OTHER AUTHORITIES

20 Am. Jur., Evidence § 190, p. 193......................................................14

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Virginia, Richmond Va. had jurisdiction of this matter pursuant to 28 U.S.C. §1332(a), the Court's Diversity Jurisdiction. Plaintiff, Michael Scott is a Virginia resident. Defendant Miller is a resident of Pennsylvania and Defendant Watsontown Trucking is incorporated under the laws of and has its principal place of business in Pennsylvania. The Complaint alleges severe injuries and an amount in controversy in excess of the jurisdictional requirement.

The matter was tried to verdict before a jury by Magistrate Judge David Novak (by consent of both parties) on November 7, 8 and 9 of 2012. (Joint Appendix ["J.A."] 400). Following a Motion for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, Judge Novak entered a Final Order and Memorandum Opinion on January 30th, 2012. (J.A. 628 and 606-627 respectively).

Plaintiff filed his Notice of Appeal on February 15th, 2013. (J.A. 629-30).

The Fourth Circuit Court of Appeals has jurisdiction over this matter pursuant to 28 U.S.C. §1291, (Review of "all final decisions of the district courts").

## STATEMENT OF THE ISSUES

The issue on appeal is whether or not the Trial Court properly gave the missing witness instruction, when plaintiff failed to appear and testify at his own

1

trial on the merits. While it is Appellee's position that the instruction was properly given, even if it was not properly given, it was at most harmless error in the context of the evidence and issues at trial.

## STATEMENT OF THE CASE

This lawsuit arose out of a collision between plaintiff's motorcycle and defendant's truck that occurred on July 20th, 2010 at the intersection of Broad Street and Parham Road in Henrico County, Virginia.  Plaintiff, Michael Scott, was traveling east bound in the center lane of Broad Street while Defendant Miller was attempting to turn onto Parham Road from the turn lane on west bound Broad Street.  As Defendant Miller was crossing the east bound lanes of Broad Street, the Plaintiff struck the side of Defendants' truck and was injured.   Plaintiff filed his Complaint in the United States District Court for the Eastern District of Virginia based upon the Court's diversity jurisdiction. (J.A. 15-24) The case was tried before Magistrate Judge Novak (by consent) in the United States District Court for the Eastern District of Virginia, Richmond Division, on November 7th, 8th, and 9th, 2012. Following the presentation of evidence and final arguments, the seven (7) member jury panel retired and deliberated uninterrupted to conclusion. The jury was provided with instructions and finding instructions that included special interrogatories on the issues of liability and damages.  (J.A. 404-452 and 453-55 respectively). Upon completing their deliberations, the jury returned a unanimous

verdict that the defendants (William Miller and Watsontown Trucking Co. Inc.) were not negligent. (J.A. 400-01). The jury was polled individually at plaintiff's request. (J.A. 401).

## FACTS

Prior to the trial of the matter, the Court heard and ruled on a number of pretrial motions. As part of the pretrial submissions, the parties agreed to the use of Virginia Model Jury Instructions (J.A. 52-54) and in point of fact, the plaintiff submitted the precise Virginia Model Jury Instruction (VMJI 2.080) that is the subject of his Motion for a New Trial. (J.A. 53). The Court initially refused the instruction pretrial but as with any Jury instruction, reserved the right to revisit the issue at the conclusion of trial based on the evidence, or a lack thereof. (J.A. 291-92, 595-6).   The instruction as submitted and as read to the jury simply states; "[i]f you believe that a party, without explanation, failed to call an available witness who has knowledge of necessary and material facts, you may presume that witness' testimony would have been unfavorable to the party who failed to call the witness." (J.A. 382, 421).  Following the Court's decision to grant the missing witness instruction, as submitted by plaintiff, the plaintiff objected generally and further asked that the instruction not refer to plaintiff's mother who did not testify. (J.A. 331-34).  The objection regarding the plaintiff's mother was resolved when counsel for defendants agreed they would not mention the plaintiff's mother in

3

closing argument. (J.A. 334). No further objection was noted by plaintiff. (J.A. 334).

Earlier, the Joint Final Pretrial Order, filed October 31st, 2012, as submitted by the parties contained a listing of witnesses for both plaintiff and defendant. Michael Scott, the plaintiff, is named first in plaintiff's trial witness list. (J.A. 61). Mr. Michael Scott is also listed on Plaintiff's List of Proposed Witnesses filed October 5th, 2012. (J.A. 35-37). During the Final Pretrial Conference, the Court inquired specifically whether or not Mr. Scott would be the first witness. (J.A. 578). In response, counsel for plaintiff gave no indication at that time that Mr. Scott would not testify. (J.A. 578-79).

Likewise, during opening argument counsel made a number of references to Mr. Scott. He clearly implied to the jury that Mr. Scott was expected to testify, referencing certain evidence that could only really come directly from the plaintiff without being hearsay. (J.A. 83-84) ("He was fearful as he was trying to claw himself away from underneath that truck[.]") Judge Novak was also clearly under the impression that Mr. Michael Scott was going to testify, and even in response to a direct question counsel for plaintiff was equivocal on the matter. (J.A. 252).

Despite plaintiff's representations to the contrary, the only evidence regarding Mr. Scott's absence at trial came from Dr. Macedo. (J.A. 135-224). Dr. Macedo did not testify that Mr. Scott was unable to testify or that he had no

4

recollection of events.  Rather, Dr. Macedo was of the opinion Mr. Scott should not hear the testimony of health care providers as to his future prognosis and future prospects. (J.A. 246).  Dr. Macedo also indicated that sitting for long periods of time in the courtroom setting would be uncomfortable and painful for the plaintiff. (J.A. 246) Dr. Macedo never testified about Mr. Scott's ability or inability to testify at trial. His testimony regarding Mr. Scott's attendance at the trial for its entirety is as follows:

Q  2.  Now, do you have an opinion as to whether or

3 not Michael Scott should have come here today and sat

4 through this trial?

5     A   Yes.  I advised against it from a medical

6 standpoint.

7     Q   Why?

8     A   Two issues.  One is this is going to be a lot

9 more than four hours of sitting here.  It is going to be

10 about eight hours a day easily, and that's five days a

11 week, not what he's doing at school, which is four hours

12 of class three days a week.  So he's going to poop out.

13 He's going to -- if he sat here, his pain would spike.

14 He would have to take a lot of extra medication and be

15  very intoxicated.  He would be very, very uncomfortable

16  for all of that time.

17      The second reason is, you know, the medical

18  testimony is saying some fairly depressing things, which

19  would be very upsetting to him to hear in a sense.  So

20  it would be hard for him to hear, you know, me making

21  statements about the fact that he's maximized; he's

22  plateaued; there is no further improvement.  I'd like

23  not to have him exposed to that from an emotional

24  standpoint, but physically was the major issue.

(J.A. 206-07).

Interestingly, counsel for Scott did not ask Dr. Macedo the more pointed question of whether or not Scott could appear and give testimony.  Perhaps counsel did not ask this question because he knew that Scott had already given a lengthy deposition addressing both questions of his medical care and treatment and the accident itself. (J.A. 462-562).

Dr. Macedo did, however, acknowledge that Mr. Scott was attending school for four (4) hours a day three (3) times a week. (J.A. 185-86). Dr. Macedo also admitted that Mr. Scott had participated in work conditioning programs lasting approximately two (2) hours each. (J.A. 218).

Dr. Macedo made no comment about the plaintiff's ability to testify and in fact, acknowledged on cross examination that Mr. Scott had previously given a deposition. (J.A. 208).

No witness testified, nor was in a position to testify, that Mr. Scott had limited information or memory about the accident. The only evidence admitted at trial regarding Mr. Scott's recollection of the accident, or lack thereof, came from the defendant's expert, Dr. Roger Gisolfi. As part of his independent medical examination of Mr. Scott, Dr. Gisolfi asked Mr. Scott what he recalled of the accident. (J.A. 313-14). Dr. Gisolfi recounted that Mr. Scott stated he recalled "losing control" of his motorcycle. (J.A. 314). Dr. Gisolfi also testified that if Scott had any amnesia it was for a very short time. (J.A. 314). While not necessarily dispositive of the case, the statement certainly indicates Mr. Scott had a recollection of the accident itself.

During the discovery phase of the case, Plaintiff Michael Scott gave a deposition on July 19th, 2012. (J.A. 462-562).  Despite the fact that it was not part of the official Court record through trial (J.A. 611), Appellant cited to this deposition as evidence of a lack of recall about the accident in support of his Rule 59 Motion for a New Trial.

Although it was not evidence at trial, Mr. Scott's deposition transcript nonetheless contains multiple instances where he recalled material facts related to

7

both liability and his injuries. He describes his experience with the motorcycle in question. (J.A. 512). He describes the motorcycle stalling unexpectedly just prior to the accident in question. (J.A. 549-50). He describes the moments before the accident. (J.A. 516-19). He also describes the accident in significant detail. (J.A. 521, 524-531). Mr. Scott also gave deposition testimony regarding the injuries he suffered and his recovery process. (J.A. 488-505, 539-548).

Scott's deposition also provides insight into his ability to appear, participate and testify at trial. For example, Mr. Scott spent several hours at a Functional Capacity Evaluation. Mr. Scott testified that he presented himself in Dr. May's office a little before 1:00 p.m. and was there till "[a] little after five[,]" on the day of the F.C.E. (J.A. 504). It is noteworthy that Mr. Scott's deposition itself began at 9:15 a.m. and ended at 11:33 a.m. (J.A. 462, 557-58). Mr. Scott was more than capable of appearing at trial and giving relevant testimony on material points.

The case was ultimately decided by the jury on the specific grounds that plaintiff had failed to meet his burden of proving that the defendants were negligent in any way that caused the accident. (J.A. 400-01). The jury heard from four (4) independent witnesses and defendant William Miller on this issue.

Defendant Miller testified un-rebutted that he entered the intersection on a green light. (J.A. 297). David Reusch, a witness called by plaintiff, testified that he and Mr. Scott were stopped at the intersection of Parham and Broad, east bound

on Broad for the red light. (J.A. 105-106). There was no one stopped in front of them. (J.A. 109). The light turned green and they began to go. (J.A. 112). The motorcycle was slightly ahead. (J.A. 112). Mr. Reusch then saw the truck in the intersection and stopped. (J.A. 112). The motorcycle did not stop and Mr. Scott "dropped the bike". (J.A. 112). The truck was already in the intersection moving slowly. (J.A. 112-114).

Mr. Elam was traveling east bound on Broad Street, directly behind the plaintiff. (J.A. 125). The light at the intersection was red as they approached it. (J.A. 125). The motorcyclist was "nearly at a stop, if not [a] complete [stop]." (J.A. 126). The light turned green and the motorcyclist "proceeded into the intersection." (J.A. 126). Mr. Elam did not follow the motorcyclist into the intersection because he "could see a vehicle coming into the intersection". (J.A. 126). Mr. Elam estimated the truck was moving at six (6) or seven (7) miles per hour. (J.A. 126).

Based on the evidence summarized above, there was more than ample evidence for a jury to conclude that Mr. Miller entered the intersection on a green light and that the situation called for him to complete his turn even if this took him into the red light. (J.A. 440-441). In other words, the jury concluded based on the totality of the evidence that Mr. Miller was not negligent or that the plaintiff had failed to meet his burden of proving negligence.

In executing the Special Verdict Form, the first question the jury was asked was:

*Did you find from a preponderance of the evidence:*

*(1)    That the defendants were negligent in the manner claimed by the plaintiff and that such negligence was a proximate cause of the damage to the plaintiff?*

*Yes*    _____

*No*    _____

The Special Verdict Form also instructed that if the jury answered "No to question No. 1" they need not address any other question (contributory negligence, assumption of risk, damages) and their "deliberations are complete". (J.A. 453).

It is not in dispute that the jury selected the "No" box for question number 1 and that therefore they did not consider any of the other issues in the case, but only considered the negligence, or lack thereof, of defendant(s). (J.A. 400-401).

## SUMMARY OF ARGUMENTS

The trial Court did not commit error when it gave the missing witness instruction as previously submitted by the plaintiff, when the plaintiff failed to appear and testify in support of his own case. The missing witness jury instruction is permitted in both Virginia State Court and Federal Courts in appropriate circumstances. The plaintiff in this case was a material, indeed the most material, witness. It was he that carried the burden of proving that the defendant's were

10

negligent and that such negligence was a proximate cause of the accident. The Appellants Motion for a New Trial pursuant to Fed. R. Civ. P. 59, is not supported by the law or the facts and evidence of this case.

The arguments of Appellant for the abrogation/elimination of the missing witness jury instruction and his arguments that he relied on a prior ruling of the Court denying the instruction, are neither timely nor consistent with the Federal Rules of Civil Procedure. Further, those arguments are inappropriate given the record of the Court below.

In addition, even if it is assumed that the instruction was somehow given in error, it did not result in any prejudice to the plaintiff's case. Based on the evidence presented, even if the instruction had not been given the jury would still have returned a verdict for the defense. The instruction as given does not direct the jury to take any specific action, nor does it reference any specific party or witness. Certainly, even if the instruction had not been given it would have been permissible for the jury to conclude that based on plaintiff's statement that he lost control of his motorcycle as testified to by Dr. Gisolfi, Mr. Scott's testimony would not have improved his position.

# ARGUMENT

## I. The Missing Witness Instruction Was Properly Given Under The Facts And Circumstances Of The Case As Tried

### Standard of Review

The lower Court correctly articulated the standard of review for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. (J.A. 613). The appropriate standard of review is an abuse of discretion standard. See *Wadsworth v. Clindon,* 846 F.2d 265, 266 (4th Cir. 1988), *Nelson v. Green Ford, Inc.,* 788 F.2d 205, 208-09 (4th Cir. 1986), and *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 n.11 (4th Cir. 2003) (as cited by Appellants). See also *Teague v. Baker,* 35 F.3d 978, 985 (4th Cir. 1994) (noted by the District Court) (J.A. 613)

### Discussion of Issue

As noted *supra,* the standard for granting a new trial based upon the missing witness jury instruction is an "abuse of discretion" standard. See also *Martinelli v. Bridgeport Roman Catholic Diocesan Corp. 196 F. 3d 409 (2d Cir. 1999).* In *Martinelli,* the defendant sought reversal of a judgment in part because the missing witness instruction was given when a priest failed to testify. *Id.* at 432. Rejecting the Church's argument the Court held:

> The Diocese's final argument is that it was reversible error for the district court to charge the jury that it could draw a negative inference from the Diocese's failure to produce Father Brett as a witness.
>
> We need not determine whether in a diversity case a missing witness

12

charge is governed by federal or state law because here the two standards are similar, and the charge, which we review only for abuse of discretion, see *United States v. Torres,* 845 F.2d 1165, 1170-71 (2d Cir. 1988*); State v. Lewis*, 245 Conn. 779, 813-14, 717 A.2d 1140, 1159 (1998)*,* was plainly proper under both standards.

The Diocese's principal complaint is that Martinelli did not show that Father Brett was available to be produced at trial. The record shows, however, that Brett remained incardinated to the Bridgeport Diocese; Diocesan officials were in contact with him as late as in 1993, and after the date that Martinelli brought his claim; the Diocese knew Brett's address, telephone number, and place of employment; and a Ms. Warick, apparently acting on the Diocese's behalf, also had more recent contact with the priest. In light of evidence of this nature, we are unable to conclude that the district court's instruction was an abuse of discretion.

*Id.* (foot note omitted).  See also *Shirley Hoffman v. Caterpillar,* 368 F. 3d 709, 716, 64 Fed. R. Evid. Serv. (Callahan) 498, ___; 58 Fed. R. Serv. 3d (Callaghan) 432, ___; 15 Am. Disabilities Cas. (BNA) 894,___ (7th Cir. 2004*)* (abuse of discretion standard for "missing witness" instruction).

In *Gray v. Great American et. al.,* 970 F.2d 1081, (2nd Cir., 1992) the United States Court of Appeals for the Second Circuit was faced facts similar to this case. In *Gray*, a case involving claims by plaintiff for assault and conversion, the plaintiff failed to appear at trial, choosing instead to go to Florida. *Id.* at 1082.

Although the case, resulting in a plaintiff's verdict, was ultimately reversed and remanded on other grounds the Second Circuit clearly noted:

Under the circumstances, the defendants were entitled to a charge that the jury might draw an adverse inference against Gray. "**The law creates a presumption, where the burden is on a party to prove a material fact peculiarly within his knowledge and he fails without excuse to testify, that his testimony, if introduced, would be adverse to his interests. "***Meier v. CIR*, 199 F.2d 392, 396 (8th Cir.

13

1952) (quoting [**4] 20 Am. Jur., Evidence § 190, page 193). "'The non-appearance of a litigant at the trial or his failure to testify as to facts material to his case and as to which he has especially full knowledge creates an inference that he refrained from appearing or testifying because the truth, if made to appear, would not aid his contention.'" *United States v. Fields,* 102 F.2d 535, 537-38 (8th Cir. 1939) (quoting 22 C.J. Section 57, p. 121). See also *N. Sims Organ & Co. v. SEC,* 293 F.2d 78, 80-81 (2d Cir. 1961), cert. denied, 368 U.S. 968, 7 L. Ed. 2d 396, 82 S. Ct. 440 (1962).

*Id.* (emphasis added).

Other Courts have drawn similar conclusions relying in part on the holding in *Gray, supra*. See *In re: Ricky Donovan Van Vleet, d/b/a First Financial Center, Inc., Debtor, Douglas Bailey, Appellant, v. Tom H. Connelly,* 461 B.R. 62, 74 (U.S. Dist. Ct. Colo. 2010) ("Bankruptcy Court did not err in noting that Appellant's refusal to attend the Contempt Hearing created certain unavoidable negative inferences')(internal citations omitted); *RIJ Pharmaceutical Corp. v. Ivax Pharmaceuticals, Inc.,* 322 F. Supp. 2d 406, 419; 54 U.C.C. Rep. Serv. 2d (Callahan) 130, __ (U.S. Dist. Court Southern Dist. N.Y. 2004) ("It is well settled that where a party fails to provide relevant information within its control concerning the subject matter of the litigation, the Court may infer that the information, if disclosed, would be harmful to the party who fails to provide it.") (Internal citations omitted); *United States of America v. R. L. Roberson,* 233 F. 2d 517; 519, 56-1 U.S. Tax Cas. (CCH) P9531,___; 49 A.F.T.R. (P-H) 1261, ____ (5th Cir. 1956) (failure of defendant in civil case to testify may raise presumption that

14

evidence would not be favorable); and *United States of America v. Currency in the Total Amount of $2,223.40,* 157 F. Supp. 300, 304; 58-1 U.S. Tax Cas. (CCH) P15,135, _____; 1A.F.T.R (RIA) 2239, ____ (U.S.D.C Northern Dist. of N.Y. 1957)*,* (claimant did not take stand, unfavorable presumption).

The District Court arrived at a similar conclusion in its Memorandum Opinion. (J.A. 616-618).

Even the Appellant in his Opening Brief does not seriously challenge the existing case law or criteria for application of the missing witness instruction. See Opening Brief at 12-13. Instead, he attacks the instruction by asking for its abrogation (see discussion *infra*), before arguing that the defense did not show that Mr. Scott was unavailable to them and that Mr. Scott's testimony was not material to any issue in the case.

A. Availability

Mr. Scott was not equally available to either party as was claimed by the plaintiff. To be "equally available" defendants would have to have equal access to Mr. Scott as a witness, something that is impossible as he is a party. See *Ananias Grajales-Romero v. American Airlines, Inc.,* 194 F. 3d 288, 298; 44 Fed. R. Serv. 3d (Callahan) 1157,____ (1st Cir. 1999) ("'missing witness'" instruction proper when witness is "'favorably disposed'" to a party or "'peculiarly available'" to a party, either grounds sufficient) and *Kean et. al. v. Commissioner of Internal*

15

*Revenue,* 469 F.2d 1183,1188; 72-2 U.S. Tax Cas. (CCH) P9764,_____; 31 A.F.T.R. wd (RIA) 344,___ (9th Cir. 1972) (equal availability means "both legally and practically").

The fact that Mr. Scott was a party to the lawsuit and the party plaintiff is sufficient as a matter of law to satisfy the requirement that he was available to plaintiff and unavailable to the defense for purposes of the missing witness instruction. It is also clear from the record that the plaintiff went to great lengths to ensure that he was completely unavailable at trial. In fact, Appellant all but admits that Mr. Scott was available for his own purposes and his testimony material when he states in his Opening Brief that "[h]ad Plaintiff been aware that the missing witness instruction would be given, he would certainly have testified." (Opening Brief of Appellant at 30). Through a series of representations, plaintiff led the Court and counsel for defendant's to believe that plaintiff would appear and testify. In particular, Mr. Scott was listed on every witness list produced prior to trial, and despite several opportunities, the Court was not advised that Mr. Scott would not appear and give testimony during the course of the trial. The Court had to reach that conclusion on its own. (J.A. 252). Finally, counsel for Mr. Scott refused to accept a subpoena or otherwise make Mr. Scott available to testify at trial.

16

B. Materiality

Mr. Scott, as the plaintiff, was a party to the action. He carries the burden of proving primary liability. Despite representations to the contrary, the only logical inference is that Mr. Scott, as an eyewitness to the accident, was a material witness to the events of the case. Plaintiff put on no evidence at trial to support any claim that Mr. Scott had no memory of the accident or that he could not testify about the accident. No such claim was made at trial or at the deposition he gave prior to trial.

The evidence that did come in at trial suggests the opposite. Dr. Gisolfi testified that during the history portion of his independent medical examination, Mr. Scott advised him that he had lost control of his motorcycle and that if he had any amnesia "it was extremely short." (J.A. 313-14) The only logical inference from this party admission is that Mr. Scott remembered the accident and that additional admissions would suggest he was guilty of negligence. No evidence in the record conflicts with or rebuts the testimony of Dr. Gisolfi on either point. Therefore, the "missing witness" instruction was perfectly proper in this case.

Plaintiff made a "tactical" decision not to call Mr. Scott. If his memory was as vague as is claimed in the plaintiff's Memorandum, it would have been a simple matter for Mr. Scott to appear and testify to that very fact. There was also considerable evidence from various witnesses that Mr. Scott interacted with various medical care providers and that he was in the unique position of discussing

17

both his post accident rehabilitation and his current state of disability. Plaintiff provided no evidence in rebuttal on these points. (See factual recitation *supra).*

For the first time, as part of his Rule 59 Motion, Appellant cited passages from Mr. Scott's deposition transcript for the assertion that Mr. Scott's potential trial testimony would not have been material (liability) or would have been cumulative and duplicative (injuries/damages).  The District Court, rather than reject the deposition testimony as untimely and not part of the record, elected to cause the full deposition to be filed and reviewed it on the issue of materiality. (J.A. 459, 623).  Nevertheless, even a cursory review of the deposition transcript reveals that Mr. Scott was able to provide material testimony on both the subject of liability and damages. (See J.A. 623-25).

## II.    Appellants Argument Requesting The Court To Abrogate The Missing Witness Instruction Is Neither Appropriate Nor Timely

**Standard of Review**

The appropriate standard of review is an abuse of discretion standard. See *Wadsworth v. Clindon,* 846 F.2d 265, 266 (4th Cir. 1988), *Nelson v. Green Ford, Inc.,* 788 F.2d 205, 208-09 (4th Cir. 1986), and *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 n.11 (4th Cir. 2003) (as cited by Appellants). See also *Teague v. Baker,* 35 F.3d 978, 985 (4th Cir. 1994) (noted by lower Court) (J.A. 613).  Additionally, the District Court correctly noted the failure to raise a specific objection at trial will result in a waiver of that specific objection.

18

(J.A. 614) [Citing *Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 112 (4th Cir. 1991), Fed. R. Civ. P. 51(c)(1) and *Belk, Inc. v. Meyer Corp.,* 679 F.3d 146, 153 n. 6 (4th Cir. 2012)].

## Discussion of Issue

In his Opening Brief, the Appellant asks for the very first time to abrogate the missing witness jury instruction in Virginia. At no time or point during the multiday jury trial, or as part of his Rule 59 Motion did he make this argument. In fact, in complete contravention to what he now requests, Appellant submitted the exact jury instruction that was given as part of the Joint Requested Jury Instructions. (J.A. 54). Counsel for Appellant argued at the Final Pretrial Conference that the instruction was appropriate should the defendant, Mr. Miller, fail to appear at trial. (J.A. 596). The defense opposed the instruction on the grounds that Mr. Miller was going to appear and testify, and defendants were still under the impression that plaintiff Scott would also appear and testify. As noted by the Trial Court, this fact alone is grounds for denying a new trial pursuant to Fed. R. Civ. P. 59. (J.A. 615) (Citing to *Doe v. Johnson,* 52 F.3d 1448, 1460 (7th Cir. 1995) ('…"[plaintiff] cannot raise the propriety of the missing witness instruction when her counsel proposed the very same instruction"').

Further, under Fed. R. Civ. P. 51, any error, whether the grounds for the objection are stated or not would require that the error affect a "substantial right"

of a party. Fed. R. Civ. P. 51(d)(2).   In the present case, Appellant has made no

such argument. He does not claim that his refusal to testify amounted to a

substantive right. The instruction in question does not address any substantive right

of any party; it merely addresses a possible evidentiary presumption.

Appellant has failed to comply with Fed. R. Civ. P. 51(c)(1) and no

substantive right is impacted by the instruction in question. As a consequence, it is

inappropriate and untimely for Appellant to request abrogation of the instruction

based upon public policy type issues/claims.

### III.   Appellant's Argument That He Relied Upon The Courts Initial Ruling On The Missing Witness Instruction, Is Inappropriate And Not Based Upon The Rules of  Civil Procedure

**Standard of Review**

The appropriate standard of review is an abuse of discretion standard. See

*Wadsworth v. Clindon,* 846 F.2d 265, 266 (4th Cir. 1988), *Nelson v. Green Ford,*

*Inc.,* 788 F.2d 205, 208-09 (4th Cir. 1986), and *Bouchat v. Baltimore Ravens*

*Football Club, Inc.,* 346 F.3d 514, 526 n.11 (4th Cir. 2003) (as cited by

Appellants). See also *Teague v. Baker,* 35 F.3d 978, 985 (4th Cir. 1994) (noted by

lower Court) (J.A. 613).  Additionally, Fed. R. Civ. P. 51(a) gives broad latitude to

the Court and the parties regarding the submission of jury instructions, up to and

after the close of evidence.

## Discussion of Issue

Appellant devotes considerable time into arguing that, but for the Court's initial ruling on the missing witness instruction (as offered by Appellant) and its reliance on same, plaintiff would have taken "appropriate steps so that plaintiff was not prejudiced by reliance on the prior ruling." (Opening Brief of Appellant at 25-26). In his Opening Brief, Appellant goes so far as to admit that "[h]ad Plaintiff been aware that the missing witness instruction would be given, he would certainly have testified." (Opening Brief of Appellant at 30). This argument must fail for two reasons: (1) no objection was made on this ground at trial, nor did plaintiff request any relief (*e.g.* request to reopen his case to call Mr. Scott), (2) plaintiff had no right to rely on the Courts initial ruling at the pre-trial conference based on Fed. R. Civ. P. 51(a).

Regardless of when the ruling was made on the missing witness instruction, Appellant cites no prejudice to him other than the instruction itself. He then baldly suggests that had he known about the Court's ruling sooner Mr. Scott would have taken the stand and testified. Yet when the ruling was in fact made, Scott made no Motion to re-open his case so that he might testify. At the conclusion of plaintiff's case, and based upon plaintiff's failure to testify, the defense requested the missing witness instruction. (J.A. 289-90) That next morning, prior to the defense resting and the charge conference at the conclusion of all the evidence, Judge Novak

advised plaintiff that he had reconsidered the matter and that he would be giving the missing witness instruction. (J.A. 294). Later that same day, the defense rested. (J.A. 324). Plaintiff then declined the opportunity to offer rebuttal evidence and rested. (J.A. 325). The charge conference took place at the conclusion of all the evidence. (J.A. 326). The missing witness instruction is specifically discussed by counsel and the Court at this time. (J.A. 331-34). Other than referencing the Court's initial ruling to the instruction, at the Final Pretrial Conference (when it was offered by plaintiff) and raising the issue of plaintiff's mother not testifying, plaintiff made no other objection nor did he request any particular relief. (J.A. 331-34).

The plaintiff had no right to rely on the Court's initial ruling (which was premised on the false assumption by plaintiff that defendant would not testify) as final. Fed. R. Civ. P. 51(a) makes it clear that it is appropriate to offer "instructions on issues that could not have reasonably have been anticipated by an earlier time that the court set for requests". Fed. R. Civ. P. 51(a)(2)(A). In the present case, the defense could not have reasonably foreseen that plaintiff would not take the stand and testify until the plaintiff actually rested his case. Prior to the charge conference upon confirming plaintiff would not testify, defendants' requested the missing witness instruction be given. (J.A. 289). To the extent Appellant relied on the Court's initial ruling at the pretrial conference, dealing with

22

a witness who would ultimately appear and testify, their reliance is misplaced. The Trial Court followed the rules of Civil Procedure and any reliance by Appellant on the pretrial ruling represents a lack of understanding of civil procedure by Appellant, not any failure of the Court.

## IV.  Even If The Missing Witness Instruction Was Inappropriate It Is Not Grounds For A New Trial

### Standard of Review

Even if an instruction is inappropriate or erroneous, a new trial is only appropriate when the instruction severely prejudices a party's case. *Hardin v. Ski Venture, Inc.,* 50 F.3d 1291, 1296 (4th Cir. 1995) and *Bank of Montreal v. Signet Bank,* 193 F.3d 818, 834 (4th Cir. 1999). See also Fed. R. Civ. P. 61 ("the court must disregard all errors and defects that do not affect any party's substantial rights.").

### Discussion of Issue

While Appellees do not believe the missing witness instruction was improperly given in this case, there is no evidence in the record upon which to conclude that it resulted in any prejudice to any party. It is simple common sense that a jury would expect a party plaintiff in a personal injury action to appear and testify or they would expect a very good explanation of why they had not. The jury got neither in this case. Dr. Macedo gave only a partial explanation that did not address plaintiff's ability to testify. (J.A. 206-07).  Whether instructed on a missing

witness or not, any jury would have serious questions about a case where the plaintiff failed to testify without explanation.

Ultimately, the jury was given a Special Verdict Form with four (4) specific questions for the jury to address. Plaintiff did not object to this Special Verdict form except to the extent he objected to the jury being instructed on contributory negligence (special interrogatory number two [2]) and assumption of risk (special interrogatory number three [3]). (J.A. 454). Special interrogatory number one (1) addressed primary negligence and indicated that if the jury did not find the defendant(s) guilty of primary negligence they need not address any of the remaining questions. (J.A. 453). The jury found on the evidence presented that the defendant(s) were not guilty of any negligence that proximately caused the accident. (J.A. 400-01). The jury was polled and the verdict entered. (J.A. 401-02). The jury never reached the last three (3) questions on the Special Verdict Form (contributory negligence, assumption of risk, and damages). (J.A. 453-455).

Although the instruction was properly given, it is equally clear that the jury likely did not consider the issue in arriving at their verdict. The Special Verdict form leaves no doubt that the defendants were not "negligent in the manner claimed by the plaintiff". In other words, plaintiff failed to meet his burden of proving primary negligence. The jury, supported by ample evidence, concluded that plaintiff had failed to prove that Mr. Miller entered the intersection on a red

24

light. This conclusion is based on the testimony of Mr. Miller, Mr. Leshner (VDOT Engineer) and the two eyewitnesses, David Ruesch and Robert Elam. It does not rely on any inference based on the failure of Mr. Scott to testify. It was stipulated that Mr. Scott was at a stop at the intersection prior to the accident.  Mr. Elam and Mr. Ruesch saw Mr. Miller turning in time for them to stop, something a jury might logically infer Mr. Scott could also have seen. This fact, coupled with the admission made to Dr. Gisolfi (loss of control of the motorcycle), leads to the logical inference that Mr. Scott saw or should have seen the truck in time to avoid the accident. However, those facts and inferences lead only to a conclusion that Mr. Scott was guilty of contributory negligence, a separate and distinct question on the Special Verdict Form that the jury did not address because they found plaintiff failed to prove a case of negligence in the first instance.

In summary, any logical inference the jury would have drawn based on the "missing witness" instruction would have run not to the issue of primary negligence of the defendant(s), but would run solely to the issue of contributory negligence, a subject upon which the jury ultimately did not deliberate. Therefore, there can be no prejudice to the plaintiff in the giving of the instruction.

As a result of the Special Verdict Form, Appellants arguments regarding prejudice to plaintiff on the issues of contributory negligence, assumption of risk and damages are of no consequence to the result and are at best harmless error. On

25

the other hand, Appellant gives no explanation as to how the missing witness jury instruction improperly influenced the jury on the issue of primary negligence.

Furthermore, the jury instruction is absolutely neutral on its face and makes no specific reference to any person or party. (J.A. 421). The jury received other instructions, without objection, that also address the credibility of witnesses and inferences that may be drawn therefrom. (J.A. 416-20). There was nothing in the missing witness instruction that directed the jury to conclude that Mr. Scott's testimony would have been unfavorable to his cause. The instruction does limit the instruction to circumstances where the failure is unexplained and in this case it was for the jury to consider the testimony of Dr. Macedo in context with the other witnesses and draw their own conclusions. The instruction is written so generically that a jury would be permitted to draw the inference against the defendant(s) if they thought that the defense should have called Mr. Scott as an adverse witness to elicit testimony on behalf of the defense. The instruction does not instruct the jury that they must draw a negative inference from a missing witness, but only that they are free to do so.

The fact of the matter is that Mr. Scott elected or refused to take the stand to discuss what happened to him on the date of the accident. Whether or not the instruction on a missing witness is given, the jury is entitled to draw any and all appropriate inferences from the fact Mr. Scott never appeared. Likewise, the

26

verdict is supported by ample other evidence that defendants were not negligent and it is at best rank speculation to say that the jury's verdict was based in any way on prejudice as a result of the missing witness instruction.

## <u>Conclusion</u>

Plaintiff in this action, Michael Scott, failed to appear at his own trial of this matter on the merits beginning November 7th, 2012. He elected not to participate in the trial in any way including giving testimony. The Court appropriately exercised its broad discretion in granting the missing witness jury instruction. The jury deliberated and unanimously found that the plaintiff failed to prove the negligence of the defendants and therefore never even reached the issue of a negative inference from Mr. Scott's failure to testify. In matters such as this, a new trial is proper only if the Trial Court abused its discretion. The Court in this case did not abuse its discretion in the granting of a missing witness instruction and further, the instruction had no impact on the verdict or deliberations. For these reasons we ask the Court to refuse to vacate the currently entered Final Judgment Order.

WHEREFORE, the Defendants, Watsontown Trucking Co., Inc. and William A. Miller, III, by Counsel, pray that this Court deny the plaintiff's Appellants Motion for a New Trial.

WATSONTOWN TRUCKING CO., INC.
WILLIAM A. MILLER, III


By _____/s/_____
                    Counsel

John K. Messersmith, IV (VSB #26403)
James H. Revere, III (VSB#33757)
Counsel for Defendants Watsontown Trucking Co., Inc. and
William A. Miller, III
KALBAUGH, PFUND & MESSERSMITH, P.C.
901 Moorefield Park Drive, Suite 200
Richmond, Virginia 23236
(804) 320-6300/(804) 320-6312 (fax)
john.messersmith@kpmlaw.com
jh.revere@kpmlaw.com]


## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements.

1. This brief complies with the Type-volume limitation of Fed. R. App.
   32(a)(7)(B) because:

   The word count of this brief is 6,756.

2. This brief complies with the typeface requirements of Fed. R. App. P.
   32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using
   Microsoft Word, Times New Roman, 14 point.


May 20, 2013


_____/s/_____
                James H. Revere, III

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 20th day of May, 2013 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

John R. Garza, Esquire
Garza, Regan & Associates
17 West Jefferson Street, Suite 100
Rockville, MD  20850-2309


Thomas T. Heslep, Esquire
419 Seventh Street, NW, Suite 405
Washington, DC  20004


          _____/s/_____
           James H. Revere, III

29